UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AMY MARIE VOORHEES,**

    **Plaintiff,**

v.                Case No: **6:15-CV-427-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OF DECISION

Amy Marie Voorhees (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Doc. No. 1. Claimant alleges an onset of disability as of September 19, 2006, primarily due to memory problems, insulin dependent diabetes, asthma, back pain, dislocated disk at L4, and a history of a spider bite. R. 103, 116, 189.[1] Claimant argues that the Administrative Law Judge (the "ALJ") erred by giving the greatest weight to the medical opinion of Wende J. Anderson, Psy.D, a consultative examining psychologist and then making findings, including the ALJ's residual functional capacity assessment ("RFC"), which lack substantial evidentiary support. Doc. No. 22 at 16-26.[2] For the reasons that follow, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

---

[1] Claimant's application for SSI was filed on October 26, 2011, and, therefore, benefits are not payable until approximately November 26, 2011. R. 189; 20 C.F.R. § 416.335.

[2] Claimant also argues that the ALJ erred by failing to: provide sufficient rationale for finding Claimant does not meet the requirements of Listing 5.08; consider whether Claimant can maintain a regular work schedule due to Claimant's history of receiving frequent emergency medical care for chronic hypoglycemia; and consider Claimant's chronic hypoglycemia in combination with her mental impairments. Doc. No. 22 at 26-45. However, for reasons set forth below, the ALJ's handling of Dr. Anderson's opinion is case dispositive.

## I. THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II. STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.   ANALYSIS.

At the center of this dispute is the ALJ's handling of the medical opinion evidence from Dr. Anderson, a consultative examining psychologist, who performed a general clinical evaluation, mental status exam, and memory testing in order to assist the Commissioner in determining Claimant's eligibility for SSI. R. 558-63. Dr. Anderson is the only examining physician or psychologist that provided a medical opinion regarding Claimant's mental limitations. *See generally* R. 22-33 (ALJ's decision showing same); Doc. No. 22 at 18 (same). In her decision, the ALJ afforded Dr. Anderson's opinion the great weight. R. 31-33 (ALJ giving Dr. Anderson's opinion greater weight than the opinions of the non-examining physicians).

At step-three of the sequential evaluation process, the ALJ relied on Dr. Anderson's opinion for the ALJ's finding that Claimant has "moderate difficulties" in concentration,

persistence or pace. R. 26-27. Ultimately, with respect to Claimant's mental limitations, the ALJ concluded that the Claimant retains the following RFC:

> The claimant's work is limited to simple, routine, and repetitive tasks. The claimant must be employed in a low stress job, which is defined as having only occasional decisionmaking [sic] required and only occasional changes in the work setting.

R. 28. In making that RFC, the ALJ heavily relied upon Dr. Anderson's opinion. R. 30-33. The ALJ repeatedly summarizes Dr. Anderson's opinion (R. 30-33) and states: "Consultative examiner Dr. Wende Anderson Psy.D. opined that the claimant's work is limited to simple, routine, and repetitive tasks." R. 31 (citing R. 558-63). However, as set forth below, Dr. Anderson did not opine that Claimant retains the ability to perform "simple, routine, and repetitive tasks." R. 31, 558-63.

On December 19, 2011, Claimant presented to Dr. Anderson on referral from the Commissioner for a mental evaluation and memory testing. R. 558-63. Dr. Anderson reviewed Claimant's history of depression, drug abuse, and arrests. R. 558-60. Claimant's mental status exam revealed that Claimant was cooperative, followed a simple set of instructions, and displayed normal eye contact. R. 560. Claimant's mood and affect were consistent with "mild to moderate depression." R. 560. Claimant stated she could read and write basic sentences, but she has difficulty with math. R. 560-61. Claimant was unable to calculate 4 x 12, stating the computation equaled 124. R. 561. Claimant's basic short and long-term memory were "generally consistent with her overall intellectual functioning," but Claimant's history of drug use affected her intellectual functioning. R. 561. Claimant was "was able to understand basic social norms and conventions." R. 561. Dr. Anderson concluded that the results of the mental status examination demonstrate that Claimant "is likely functioning in the extremely low to borderline range," and her judgment and insight are "poor." R. 561. The only opinion regarding Claimant's

"capabilities" offered by Dr. Anderson is that she appeared to be incapable of managing her own funds.  *Id*. at 562.

Dr. Anderson then performed the Wechsler Memory Scale – Fourth Edition ("WMS-IV"). R. 561-63.  The raw data results of the WMS-IV revealed the following: "Extremely Low" auditory memory; "Low Average" visual memory; "Borderline" visual working memory; "Extremely Low" immediate memory; and "Extremely Low" delayed memory. R. 561. Dr. Anderson stated the following about the results of the WMS-IV:

> Overall, [Claimant's] memory abilities registered within the Extremely Low to Low Average of functioning.  Specifically, [Claimant] displayed Extremely Low abilities for learning and recall with orally presented information.  She evidenced severe impairments when required to learn and recall details from a story both immediately after its presentation and after a delay.  Moderate to mild impairment was noted on the immediate recall trial of word association task, and severe to moderate impairment was noted in terms of [Claimant's] delayed recall of this information.  This pattern suggested that [Claimant] learned oral information when the task was less complex and involved small portions of information.
>
> [Claimant] performed within the Low Average range for learning and recall with visually presented information.  Specifically, she evidenced average skills when learning designs, and when recalling them secondary to a delay.  Notably, when required to draw a copy of visually presented geometric figures, [Claimant] performed within the severely to moderately impaired range when learning this information.  However, following a delay she evidenced mildly impaired performance.
>
> Furthermore, [Claimant] evidenced Extremely Low to Borderline performance on measures of concentration and mental control with visually presented information.  She displayed mildly impaired performance on measures of spatial working memory requiring storage, manipulation, and the ability to ignore competing stimuli. Mildly impaired performance was additionally noted on a measure of [Claimant's] ability to maintain a mental image of visual information to which she had been exposed.  Her overall ability to recall information immediately after its presentation fell within the Extremely Low range, as did her memory secondary to a delay.

R. 562. Thus, as noted by the ALJ, the Claimant scored in the "extremely low range" regarding "all capabilities of memory."  R. 32.

Based upon the results of her evaluation and Claimant's self-reports, Dr. Anderson diagnosed Claimant with: Bipolar II Disorder with most recent episode depressed; anxiety disorder not otherwise specified; polysubstance depending in early full remission; cognitive disorder not otherwise specified; rule out mild mental retardation; rule out attention deficit, hyperactivity disorder; and rule out learning disabilities.  R. 563.  Dr. Anderson recommended that Claimant undergo intellectual and adaptive functioning evaluations.  R. 562.  Finally, Dr. Anderson opined that Claimant's prognosis is guarded, but it may improve if she receives adequate treatment.  R. 563.

Contrary to the ALJ's representation, Dr. Anderson never opined that despite her memory impairments, Claimant retains the ability to perform simple, routine and repetitive on a fully time basis.  *Compare* R. 31 *with* R. 558-63.  Moreover, the ALJ's finding at step-three that Claimant is only moderately limited in her ability to maintain concentration, persistence or pace is not supported by Dr. Anderson's opinions.  *Compare* R. 27 *with* R. 558-63.  Dr. Anderson concluded that Claimant is "likely functioning in the extremely low to borderline range" and she has poor judgement and insight.  R. 561.  Similarly, the results of Dr. Anderson's WMS-IV test demonstrate that Claimant's ability to perform most memory functions are substantially impaired. R. 561-62.  Dr. Anderson's only opinion regarding Claimant's capabilities is that she appears to be unable to manage her funds.  R. 562.  At no point did Dr. Anderson opine that Claimant retains the ability to perform "simple, routine, and repetitive tasks" as stated by the ALJ.  R. 31.  Thus, the Court finds the ALJ's conclusion that, notwithstanding her limitations, Claimant can still perform simple, routine, and repetitive tasks is not supported by substantial evidence.  *Compare*

R. 26-28, 30-33 *with* 558-63.  Accordingly, the Commissioner's final decision is not supported by substantial evidence.[3]

### IV.     CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** the for further proceedings pursuant to sentence four of Section 405(g); and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE and ORDERED** in Orlando, Florida on July 14, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[3] Because the ALJ finding with respect to Dr. Anderson's opinion are not supported by substantial evidence, the case must be remanded for further proceedings.  Therefore, it is unnecessary to determine whether the ALJ committed other errors (*see supra* n.2). *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record).